## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO. 3:23-CR-26** |
| | **:** | |
| **KEVIN JONES,** | **:** | **(JUDGE MANNION)** |
| | **:** | |
| **Defendant** | **:** | |
| | **:** | |

## <u>MEMORANDUM</u>

Before the Court is a motion for a judgment of acquittal and/or new trial (Doc. 654) by Defendant Kevin Jones, also known as "Hat," filed on September 3, 2024. Defendant filed this motion following a three-day trial which resulted in a guilty verdict on the sole count in the Indictment filed on February 14, 2023, in which Defendant was charged with conspiracy to distribute and possess with intent to distribute more than 400 grams of a mixture and substance containing fentanyl, in violation of Title 21, U.S.C. §846. (Doc. 1). On June 27, 2024, a jury found Defendant guilty beyond a reasonable doubt on the evidence elicited during trial. (Doc. 567).

Defendant filed his supporting brief, titled "Brief in Support of Post-Trial Motion for Judgment of Acquittal and New Trial," on September 3, 2024. (Doc. 654-1). The Government filed its opposition brief on September 30,

2024. (Doc. 683). The Defendant did not file a reply brief and the time for doing so has passed. Therefore, this matter is ripe for disposition. For the reasons discussed below, the Court will deny Defendant's motion.

## I.   BACKGROUND

Kevin Jones, also known as "Hat," was found guilty at trial of conspiracy to distribute and possess with intent to distribute more than 400 grams of fentanyl, a Schedule II controlled substance. Due to the filing of an Information of Prior Convictions pursuant to 21 U.S.C. §851, Defendant faces a mandatory minimum sentence of 15 years in prison. (Doc. 129).

Defendant was one of 15 defendants indicted by a grand jury on February 14, 2023, in a wide-ranging conspiracy involving the trafficking of fentanyl pills sent via mail from Arizona to Pennsylvania, Massachusetts, and elsewhere. The Indictment charges a conspiracy beginning in January of 2020 through the date of the Indictment (February 14, 2023). (Doc. 1).

In general, many of the defendants in the Indictment, including Jones, were ordering large quantities of fentanyl pills, and transmitting cash payments for such pills to one of several fentanyl sources in Arizona. The Arizona drug sources included Devon Beckford, Tyla Griffin, Shane Burns and/or Christina Patacky-Beghin. Packages containing fentanyl pills were then sent from Arizona to Pennsylvania, Massachusetts, and elsewhere, via

the U.S. Postal Service; hidden, at times, in Lego sets. (Doc. 546, pp. 36-37). The pills were then distributed in the Middle District of Pennsylvania and elsewhere.

Defendant was a distributor of fentanyl pills in the Luzerne County area and elsewhere. His source for the pills was co-conspirator Devon Beckford in Arizona, who was charged in a separate indictment. Beckford previously plead guilty to a charge of drug delivery resulting in death in the Middle District of Pennsylvania. Beckford and Defendant knew each other when they both resided in the Wilkes-Barre, PA area.

Defendant sent money for the pills to Beckford in the form of "Cash App" payments.[1] Cash App records introduced at trial indicate that Defendant used his own Cash App account and the Cash App account of his girlfriend, Sabrina Cleveland, acting on Defendant's direction, to send $31,675 to Beckford between March 17, 2021, and November 27, 2021. Of that total, Cleveland, acting on Defendant's direction, sent $10,825 to Beckford via Cash App. (Doc. 548, pp. 22-26, 30-31, 65-68). During trial, Cleveland testified that Defendant would reimburse her in cash for making

---

[1] Cash App is a peer to peer ("P2P") payment application that lets users quickly send, receive and invest money. *See* Kevin Payne, *What is Cash App and How Does it Work?*, Forbes Advisor, Apr. 19, 2023, https://www.forbes.com/advisor/money-transfer/what-is-cash-app/.

the payments to Beckford. (*Id.*, p. 79). Beckford testified that all the Cash App payments sent by Defendant or Cleveland were in exchange for fentanyl pills. (*Id.*, pp. 22-26).

At trial, the Government presented postal records and postal receipts that were found in the cell phone records of Beckford, indicating that during April 10, 2021 and November 2021, Beckford sent 10 separate packages from Arizona to one of two addresses associated with Defendant: three packages were sent to 6 Woodward Street in Wilkes-Barre, an apartment that Defendant rented, and seven packages were sent to 14 Potter Avenue in Plainville, Massachusetts, where Defendant would reside at times with his girlfriend, Cleveland. Beckford testified that each of the mail packages sent to Defendant contained a minimum of 500 pills containing fentanyl, but sometimes contained a greater quantity of pills. (Doc. 548, pp. 21-23). Furthermore, postal records indicated that all the packages sent by Beckford were received. The Government presented evidence of an IP address associated with Defendant's PenTeleData account that was utilized to "track" the arrival status of some of the packages sent by Beckford.

Beckford testified that in June of 2021, he traveled from Arizona to Pennsylvania for the birthday party of an associate and, while in the Wilkes-Barre area, met with Defendant and provided him with an additional 500

fentanyl pills. Such testimony was supported with Defendant's Cash App records of June 5 and June 6, 2021, where Defendant paid Beckford a total of $3,000. (Doc. 548, pp. 25-27).

Co-defendants Samantha Smart and Shayna Colon Acosta testified that they also received packages containing fentanyl pills from Beckford in Arizona. Postal records indicated that Smart received 13 packages at her address located at 82 Parsonage Street in Pittston, PA and Colon Acosta received 13 packages at her address at 15 Lanning Lane in Wilkes-Barre, PA. Smart, Colon Acosta and Beckford testified that each of the packages contained fentanyl pills. Smart and Colon Acosta used the pills they received from Beckford and sold some of the pills. Smart also testified that she purchased fentanyl pills directly from Defendant, on at least three occasions in 2020-2021 in Wilkes-Barre.

The packages sent by Beckford to Colon Acosta were sent there for co-conspirators Akee Miller, also known as "Mitch," and Rahmel Wigfall, also known as "Inf," both of whom have since pleaded guilty and been sentenced. Miller and Wigfall were sub-distributors for Beckford. Miller and Wigfall would pay Colon Acosta in fentanyl pills for allowing them to use her residence as a place where Beckford could mail the pills. Miller and Wigfall then distributed the pills in the Wilkes-Barre area.

Co-defendant Rachel Smyden testified that she purchased fentanyl pills from Defendant "almost every other day" in Wilkes-Barre between the summers of 2019 and 2020. (Doc. 547, p. 114). Smyden testified that she purchased fentanyl pills via mail from co-conspirator Tyla Griffin in Arizona. At the time, Griffin was Beckford's girlfriend. Smyden received 11 packages in the mail, sent by Griffin from Arizona. Smyden stated that each package contained at least 500 to 1,000 fentanyl pills. (*Id.*, p. 116). This testimony was confirmed by Griffin, who sent the pills. (*Id.*, p. 196).

Griffin also testified that Beckford was sending fentanyl pills to someone who went by the name of "Hat." (Doc. 547, p. 198). Griffin knew this because Beckford talked about sending pills to "Hat." (*Id.*).

During the investigation, investigators made three controlled purchases of fentanyl pills from Beckford, one controlled purchase of pills from Griffin, and three controlled purchases of fentanyl pills from Shane Burns, Beckford's supplier in Arizona. Multiple lab tests confirm that the pills contained fentanyl. In addition, exhibited lab reports indicated a 10 to 1 ratio of pills to grams, that is, 10 pills were found to contain 1 gram of a mixture and substance containing fentanyl. Beckford testified to have sent 10 packages to Defendant via mail, and each contained a minimum of 500 pills (sometimes more). Further, Beckford engaged in a hand-to-hand transaction

in which he sold an additional 500 pills to Defendant when Beckford visited Wilkes-Barre for the birthday party of his associate. Thus, based on the presented lab reports and testimony, the Government showed that Defendant had held a total of at least 5,500 pills, i.e., 550 grams of fentanyl (if not more). Given Defendant's girlfriend's testimony that neither she nor Defendant were fentanyl users, it was reasonable for the jury to believe that all those fentanyl pills were meant for distribution to others.

Beckford also testified that Defendant was a distributor of fentanyl pills and that the fentanyl pills Beckford sent Defendant were for further distribution. Lastly, Federal Bureau of Investigation TFO Shane Yelland testified that, based on his training and experience, the number of pills that Defendant received, and the amount of money Defendant paid for the pills, would indicate that the pills were not typically possessed for personal use but rather possessed for distribution to others.

Defendant did not have any testimony to provide, and the case went to the jury after closing arguments and the Court's jury charge. The jury returned with a guilty verdict on the count charged. (Doc. 567).

## II.   LEGAL STANDARD

### A. Motion for Judgment of Acquittal

A defendant may move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Where "the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

In ruling on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty [sic] beyond a reasonable doubt based on the available evidence.'" *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). A finding of insufficiency should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury. *See United States v. Jannotti*, 673 F.2d 578, 581 (3d Cir.) (en banc) (trial court usurped jury function by deciding contested issues of fact), *cert. denied*, 457 U.S. 1106, 102 S. Ct. 2906, 73 L.Ed.2d 1315 (1982); see also 2A Charles A. Wright, FED. PRAC. & PRO. (Criminal 3d) §467 at 311 (2000) ("A number of familiar rules circumscribe the court in

determining whether the evidence is sufficient ... It is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence. These are functions of the jury.").

*United States v. Brodie*, 403 F.3d 123,133 (3d Cir. 2005). The Third Circuit has long advised that, in considering a post-verdict judgment of acquittal, the court "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). In *United States v. Tyler*, the Third Circuit reiterated the well-recognized standard:

This review is "highly deferential" to the factual findings of the jury, and we "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration and omission in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)).

Thus, even if the evidence adduced is consistent with multiple possibilities, our role as a reviewing court is to uphold the jury verdict ... as long as it passes the bare rationality test. Reversing

the jury's conclusion simply because another inference is possible - or even equally plausible - is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges, which is that [t]he evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. It is up to the jury - not the district court judge or our Court - to examine the evidence and draw inferences. Unless the jury's conclusion is irrational, it must be upheld. *Id.* at 433 (alteration in original) (internal quotation marks and citation omitted).

956 F.3d 116, 122-123 (3d Cir. 2020).

### B. Motion for a New Trial

A defendant may move for a new trial pursuant to Federal Rule of Criminal Procedure 33 which provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

"Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial "only if it

believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (citation and quotation marks omitted) .... Such motions are not favored and should be "granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted).

*United States v. Silveus*, 542 F.3d 993, 1004-1005 (3d Cir. 2008). "The discretion that federal trial courts exercise in addressing allegations of juror and prosecutorial misconduct extends to the determination of whether prejudice has been demonstrated." *United States v. Smith*, 139 F. App'x 475, 477 (3d Cir. 2005) (citing *United States v. Resko*, 3 F.3d 684, 690 (3d Cir. 1993)). Where a defendant alleges that the cumulative effect of trial errors resulted in an unfair trial, a new trial is required "only when 'the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)).

## III.   DISCUSSION

Defendant's motion for a judgment of acquittal and/or new trial (Doc. 654) requests that the Court grant either a judgment of acquittal or a new trial. (*Id.*, p. 2). His supporting brief acknowledges the evidence presented

by the Government against him (e.g., testimony of Defendant's co-conspirators, Cash App receipts, evidence of USPS package deliveries to residences associated with Defendant), (Doc. 654-1, pp. 1-2), but posits that the Government cannot show the amount of pills, weight of fentanyl, or type of drugs Defendant conspired to distribute since "no actual drugs or drug paraphernalia were recovered from [Defendant]." (*Id.*, p. 2). Defendant further alleges that the "messages between Beckford and [Defendant] illustrating a drug transaction, only pertain[] to marijuana" and "[t]he Government is relying solely on Mr. Beckford for the amount of drugs and the type of drugs sent from Arizona to [Defendant]." (*Id.*). Thus, Defendant argues "no rational trier of fact could have determined the actual weight or amount or type of drug sent." (*Id.*, p. 4). The court disagrees with Defendant's contention.

At trial, the Government presented sufficient evidence in the form of testimony from multiple co-conspirators, including Defendant's girlfriend, postal records, postal receipts, Cash App receipts, and testimony from investigators who performed controlled purchases of fentanyl pills, to explain and demonstrate to the jury the conspiracy scheme Defendant was a part of to distribute and possess with intent to distribute more than 400 grams of a mixture and substance containing fentanyl.

Though it is true that the Government relied heavily on Beckford's testimony, such testimony was not the only evidence presented at trial neither is it objectionable *ab initio*. A jury is able to decide the facts of a case based on the testimony of a witness it deems credible. *See United States v. Khan*, 778 F. App'x 94, 97 (3d Cir. 2019) (testimony and video evidence that "sufficed for a reasonable jury to convict [the Defendant]" was sufficient to deny the Defendant's motion for judgment of acquittal); *United States v. Chambers*, 597 F. App'x 707, 711 (3d Cir. 2015) (upholding the District Court's denial of Defendant's motion for a judgment of acquittal when the evidence consisted of witness testimony and a recorded phone conversation); *United States v. Kermidas*, 332 F. Supp. 1312, 1316 (M.D. Pa. 1971) (stating that witness testimony was sufficient to support a guilty verdict); *United States v. Hoang*, No. 07-662-05, 2009 WL 2047895, at *1 (E.D. Pa. July 15, 2009) (denying the Defendant's motion for judgment of acquittal because the video surveillance and testimony of the government's corroborating witnesses was sufficient to sustain the verdict).

Here, a jury has found Beckford to be credible and believed his testimony to be fact. The Court is "highly deferential" to the factual findings of the jury and will not sit here and "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its

judgment for that of the jury." *Caraballo-Rodriguez*, 726 F.3d at 430. Nor will it allow Defendant to do so. Therefore, a motion for judgment of acquittal is denied.

By the same token, the Court finds that the evidence presented at trial is sufficiently determinative of Defendant's guilt beyond a reasonable doubt and no new trial is needed. The jury verdict was not contrary to the weight of the evidence, there is no serious danger that a miscarriage of justice has occurred, nor has an innocent person been convicted. *Johnson*, 302 F.3d at 150. Accordingly, this Court will not upset the findings of this case nor the issued verdict. Therefore, a motion for a new trial is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal and/or New Trial (Doc. 654) is **DENIED**. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 11, 2024**
23-26-04

- 14 -